Our second case for this morning is Cates v. United States, and we'll hear first from Mr. Henderson.  Thank you, Your Honor. May it please the Court. I'm Peter Henderson. I represent Vladimirld Cates. I want to start with a discussion of appellate counsel. The ineffectiveness standard, of course, requires that appellate counsel miss an obvious and clearly stronger argument than the one he raised on appeal. The government hasn't really contested that that's present in this case. I think the performance of appellate counsel really was quite shameful, if I can use that word, but it was clearly deficient. He stood at this podium and asked the Court to affirm both the conviction and sentence, but send it back on a procedural issue that had no merit. So I think we have to talk about prejudice then, and that's whether any appeal would have resulted in a different outcome other than affirmance. That then turns to the merits of this jury instruction that was problematic and that both attorneys missed and both attorneys should have raised. Because under the law of this circuit, force and fear are clearly demarcated terms. That is not so in some of the other circuits. And what the government did before trial was submit a jury instruction based on language in those other opinions that I think closely tracks the Tenth Circuit opinion that conflates the two and basically says, if you create a coercive environment or if you, by your size, by your authority, make it so that somebody feels restrained, that's force. Right. There is a big size discrepancy between these two people, right? But you're saying that that's indifferent. That force shouldn't mean every time two people are different sizes. Right. I mean, you know, everybody in this room is a different size, but nobody's using force right now. The disparity in size between two people cannot imply force. I'm unsure, you know, they use the force. So it's a basic problem that, I mean, although there's a threat element to the 2241A, it has to be a threat of death, serious bodily injury, kidnapping, other kinds of threat, lesser body injury, for example. You're saying it had to be somehow excluded. That's right. So there are two subsections. And the first subsection is what that jury instruction was trying to define, saying force is this. And then after the court explained that, the court said, alternatively, you can find aggravated sexual abuse on the basis of fear of death or serious bodily injury. We think that the jury did not convict under that subsection because the jury did not find Mr. Cates guilty beyond a reasonable doubt of using the firearm in connection with the offense. And that was the victim's testimony. Essentially, I was scared. He was bigger. He was a police officer. He had a gun. And so it appears the jury did not credit her testimony that, in fact, this assault occurred because she feared serious bodily injury or death. Well, and that wasn't really even the theory of the prosecution here. The prosecution argued from this erroneous instruction, as I understand the theory of the case. That's exactly right. They said, look, he's a police officer. He's much bigger than her. And that was her testimony. At one point, she said, well, the prosecutor asked her, so what happened next? Well, I agreed to have sex with him. Well, did you mean agreed? Well, I didn't agree, but I let him do whatever he was going to do because he's bigger. He's a police officer. I'm scared of him. So that's a serious, I think it's more probable than not that had the jury been correctly instructed, it would have found not guilty on the aggravated sexual abuse. Because again, it didn't find guilty either on causing bodily harm. And so this was a very close case. That jury instruction was problematic. And he's not charged with just regular sexual abuse, the non-aggravated form. Because that's not an aggravator under the Deprivation of Civil Rights. Without the aggravator, it's a one-year felony. That's right. And it's not a 242? That's right. Well, it is. So 242 would apply because it's a violation of civil rights. But it's not. But it's a much lesser. It's a much lesser penalty. Right. That's correct. And my point is not charged as such. So that's not available for the government to back up to. No, that's right. Well, and I mean, what you'd back up to is just the one-year maximum penalty under Section 242. So it's a clear error. It's an obvious error. It would have succeeded on plain error review because the law and the circuit has been this way for more than 20 years. That Oyls case is interesting. That's what establishes the distinction between the 2241 and 2242 offenses, definitionally. But it's probably wrong on the double jeopardy question, right, about the lesser included offense? I can't recall the case to that extent. I mean, it was a double jeopardy challenge in whether the sexual abuse offense is a lesser included of the aggravated sexual abuse. Oh, I see. The panel said no, but I mean, one nests inside the other pretty thinly. It seems like it. So it may be wrong on other grounds, but the law of the circuit is that there's a distinction between these two offenses and that one is the lesser of the other. Exactly. And the law of the circuit was reaffirmed in 2012 in, I think, the Hensel case where it basically said, look, this is force, this is fear. Force is physical force. Force is physical force, right, just like the Johnson case. And we have a whole other line of case. I mean, we've been thinking about force in all different kinds of contexts, haven't we? And yes, physical force, Johnson 2010 or whatever you want to look at. That's right. We're all aware of that. So, you know, the typical remedy for ineffective assistance of counsel on appeal would be give the person a new appeal. What we've argued is that that would essentially be duplicative. It would be duplicative. It's a matter of law for this panel to decide. Either it was erroneous and plainly erroneous, in which case he's entitled to a new trial, or it wasn't and he didn't suffer prejudice and so it should be affirmed. So typically we'd ask for... So you're asking for a new trial. We're asking for a new trial rather than a new appeal. Let me touch on... Is there any issue about waiver with these, with your jury instruction point? I want you to touch on that. Sure. I don't think there is. This issue was certified in the district court and, of course, recertified on appeal. Mr. Cates, in our view, has had two ineffective attorneys who never spotted the issue. And then, of course, was pro se in the district court. And I think the rule that pro se pleading should be construed liberally, and the fact that the district court actually looked at the jury instructions and said, I don't see anything wrong with them, means there's no waiver here. Right. And he talked about the ineffectiveness with respect to the jury instructions and then to the question from the jury. Right. Which involved aggravated sexual abuse. So he certainly raised it and said, there's a problem here. I don't know what it is. And that's something we pointed out in our reply brief. I think Judge Samuel did an admiral job with, I think, a 64-page opinion, going through each claim, giving an analysis. I think it really would have helped in this case for the district court to have appointed a lawyer. If we're concerned about waiver on appeal, this is a case where both lawyers have been criticized by this court. And it's not a run-of-the-mill 2255. Now, that's not a legal requirement. We haven't argued that as a basis for reversal. But the equity. But you're essentially saying, even pro se, he hit the side of the barn, and so the district judge and everybody else understood what was going on. Exactly. And 2255 has some equitable principles associated with it. I think it would be extremely inequitable to say, you have waived this argument because you had two ineffective attorneys and you were pro se. But let me turn to trial counsel just briefly. If Mr. Cates isn't entitled to a new trial on the appellate counsel basis, we do need an evidentiary hearing under 2255. So long as a petitioner alleges facts that, if proven, would entitle him to relief, an evidentiary hearing is typically required. And in this case, he alleged two things that I think required that hearing. One is he alleged that he was essentially given no choice but to testify. Right. I mean, so that part, I guess what I recall from the briefs is that he remembers the lawyer saying, you really need to testify, but the lawyer never wraps it up by saying, but of course it's up to you, or anything like that. That's correct. And it's part of a- And it's stating it in a mandatory way. It's not just saying, I think it would be a really good idea to testify or anything. And it's part of a larger series of complaints he made in the petition about his lawyer didn't talk to him. She sent out the investigator to talk to him a couple times, but there really wasn't any joint preparation for this trial. And part of that was, he alleged that she called him up and said, they're offering, I think maybe seven or eight years, something like that. Do you want to take it? He said, no, I'm innocent. I'm not going to take that. And she said, okay, well, we're going to trial and you're going to have to testify. That's enough at least to get an evidentiary hearing on whether that took place, how many times they met. Was this explained? How it was phrased. Right. Because the right to testify is a fundamental right. That's a right that belongs to the defendant. There's no question about that. Right. And so when we talk about prejudice, I think the question is not whether the trial would have come out differently had he not testified, but whether had effective advice been given, whether he would have made the decision to testify or not. When we've got a guilty plea, it's whether you would have done it without the advice. When we've got an appeal, all those decisions that belong to the defendant, it's not so much what the outcome of the proceeding is going to be, it's whether you would have exercised the right or not. Would he have made the decision in question differently? Right. Exactly. Was there not a colloquy between the judge and the defendant on this point? There usually is or ought to be. Not that I recall. I'll look for that during the break, but I don't recall. I think it was basically, Mr. Cates is going to testify and I'm going to call him. The one thing that sticks in mind, there may have been some sort of discussion in the final pretrial conference, but let me try to verify that for you. That's just my memory. The final issue, of course, is the issue of this witness, Velez. I think both the government and the district court and Ms. Boyle really understated the importance of her testimony. Ms. Lemons testified that she told Velez, before she was arrested, before she kicked the officer, according to the officer, that she disclosed this rape. And the government relied on that heavily in closing arguments. She told detectives that she disclosed before she had any reason to try to avoid problems herself. And it's not so much a question of, did a sexual act occur? Because everybody's admitted it has. It's how do you characterize that? And having a motive to characterize that in a different way can arise after you've committed aggravated battery on an officer. So I'll save the rest of my time for the model. Thank you. That sounds good. Thank you. Mr. Johnson. Yes, Your Honor. My name is Mel Johnson. I'm an assistant U.S. attorney from Milwaukee, and I represent the United States in this appeal. The defense seeks post-conviction relief under 28 U.S.C. section 2255, based on allegations of ineffective assistance, both by Mr. Cates' trial counsel, Bridget Boyle, and his sentencing and appellate counsel, Dennis Coffey. The first allegation of ineffective assistance is the failure to object to a jury instruction on aggravated sexual abuse that was significant because if aggravated sexual abuse was present in the case, that increased the maximum sentence to which Mr. Cates was subject. The jury instruction looks quite problematic to me, to tell you the truth, if we're just going to start with whether there was something to object to. Well, I would not say it's problematic. In fact, I would say under the circumstances, it was a good and appropriate instruction. But how, I'm looking at page 17 of the opening brief, force may also be implied from a disparity in coercive power or in size between the defendant and Lemons. They could have been standing in different rooms. I don't see how you. That's like an instruction to win. Yeah. I don't see. Well. Tailored to the facts of the case. That's what she was claiming. And that's like, we win because I'm instructing you that we win. Well, the instruction included things that the jury could consider. But it doesn't matter if the jury also could have simply decided force existed because he's a really big guy and she apparently is a very petite woman. And so the risk that the jury found force on an impermissible basis is the problem. Well. I mean, if you had talked about force, you know, degree of restraint, you know, sufficient to prevent her from escaping, you know, grabbing onto her neck or her hair or, I don't know. I mean, the statute itself, 2241A, which I think it has to be our starting point, has two subparts, using force against the other person. That's what we're talking about. And then there's a part that specifically addresses threats or fear, but that has to be death, serious bodily injury or kidnapping. And the instruction did go on in the final paragraph to cover that, but the force part of the statute shouldn't blend over into the threat part of the statute or the fear part. Well, I don't think that this paragraph that you're talking about, which set forth things that the jury could consider in determining whether there was aggravated sexual abuse. How can the jury consider on the force side just the fact that these are two different sized people? Well, the instruction didn't say if they're different sizes, you shall find force. It said there are things that you can consider. But it says it's a valid implication. And so if that's the only thing they find under this instruction, they could find, they could convict. They just find, you know, he's, you know, a former player for the Chicago Bears and she's, you know, a petite-sized model, ergo force. Well, I don't think that that's a fair reading of the instruction. Force may be implied from a disparity in size between the defendant and Lemons. That's what it says. Well, but implied only means that's something you can take into account. No, it doesn't. It means that you can draw an inference that the disparity in size equals force. That's what the English language means here. Well, but there's no reason to believe, based on the record, that that was argued or was the government's theory or was relied upon as a basis to convict Mr. Cates because the testimony of Ms. Lemons about what occurred went so far beyond that. She did mention the fact that he was bigger than she was. But it was contested. He, you know, I don't know. Well, it was contested, but the jury found beyond a reasonable doubt. Because they were told that they could look at this. They didn't have to believe he grabbed her in the way that she said he did. All they had to believe is that an imposing man comes into the room and she decides to acquiesce and that that's enough for force. And that's not enough for force under the statute. Well, the paragraph, though, listed a series of factors which could be considered. That was one of them. And it didn't say that they had to find all of them. True, but it said that they could consider these various factors and it included other factors like force does not require violence. Force can be satisfied by restraint to prevent escape. All of these ideas are supported by case law, which is cited at pages 37 and 38 of my brief. All of them logically fit together. And all of them are consistent with the testimony of Ms. Lemons as to what happened. But they're not consistent with the law of this circuit. And they're frankly not consistent with the text of the statute. Those cases are just wrong. Well, when you say that it's not consistent with the law of this circuit, I assume you're referring to the Boyles case. Yes. I would suggest, with all due respect, that Boyles was wrongly decided because Boyles did not rely on the complete wording of the statutory definitions of aggravated sexual abuse and plain sexual abuse. And so that lent itself to the defense argument that this instruction somehow conflated aggravated sexual abuse and plain sexual abuse. But Boyles did not discuss the complete definition of aggravated sexual abuse. So I would suggest to you that Boyles... Boyles distinguished between forcible aggravated sexual abuse, in other words, the A1 offense under 2241 and the base offense of sexual abuse, which is the put in fear, threat or put in fear. And your instruction permitted the jury to convict the defendant on the A1 forcible alternative and defined it as less than even the A2 definition because it had no death, serious bodily injury or kidnapping qualifier. Well, yes, it did have those qualifiers. Well, yes, if they opted to convict under the A2 definition, but if they opted to convict under the A1 definition, the instruction was plainly wrong because it reduced the burden below even the A2 offense because it didn't include those qualifiers. So it reduced the burden to basically the base offense of sexual abuse, in other words, put in fear or threat, sexual abuse by threat or being placed in fear without the requirement of fear of death, serious bodily injury or kidnapping. That's what this instruction does. And that's why it's textually wrong in terms of extrapolating from the elements of the statute. And it's also wrong as a matter of the law of this circuit. Well, I'd make several responses. First of all, I want to reiterate our position that this issue was waived by the defendant's failure to raise it in his 2255 motion. But he does raise the general point. He's a pro se person and he's not going to write a brief the way a lawyer would. Everybody knew this was on the table. You can tell the district court knew. I didn't know it. If you look in the arguments submitted to Judge Stadmiller and you look at his decision, you don't find a real discussion of this point because it wasn't really raised. The question that was raised by the defendant, and it's at page 19 of the combined document, which was his 2255 petition and his supporting memorandum. The jury instruction issue he raised was that his counsel was ineffective for keeping silent and agreeing with Assistant U.S. Attorney Mel Johnson concerning not repeating the jury instruction when the jury asked a question. So that's what this was about. And there was a question asked during the deliberations. And the question was having nothing to do with this. The question was, if we answer guilty on count one, but answer no to either question one or two, do we invalidate the verdict? The government crafted an additional jury instruction, which we asked the court to give. Judge Stadmiller disagreed and pointed the jury back to the existing instructions. And the defense attorney agreed with that. And that's the issue that this claim by Mr. Cates raised. And that's the issue that Judge Stadmiller resolved, because no other issue was raised by this claim. Beyond that, I contend that this jury instruction was clearly proper. It tracked the language of 2241A, which defines aggravated sexual abuse, as we've noted in terms of force and fear. The defense argues that this instruction conflates aggravated sexual abuse under section 2241A with regular sexual abuse under section 2242. Which it certainly seems to do. Well, I would suggest that it doesn't. Aggravated sexual abuse does cover fear, but it covers fear of death, serious bodily injury or kidnapping. Sexual abuse includes fear, but not fear of death, bodily injury or kidnapping. The jury instruction limited aggravated sexual abuse to fear of death, serious bodily injury or kidnapping. That's not the problematic part of the instruction. It's the definition of force, where the instruction went far beyond the statutory text and far beyond the law of this circuit, which requires physical force. I'm adding to the discussion the fact that... Do you concede that coercion is not physical force? No. So, if I said to you, I'm going to kidnap your son, is that force? I'm not touching you. Yeah, I should say that... I should modify my answer to say that coercion does... Well, that this statute requires some physical force. I do not... So, at a minimum, the reference to coercion in your instruction is flawed. Is... Flawed, wrong, as a matter of law. The instruction was erroneous. Perhaps, but when combined with the fact that the instruction tracks the statutory language... But it doesn't. That's the whole problem. You just conceded that it doesn't. You defined it to include coercion. Coercion is not physical force. However, I pointed out that the prior paragraph of the instruction defines aggravated sexual abuse in the statutory terms. It distinguishes itself from sexual abuse by its reference to death, serious injury, or... That's the alternatively paragraph. The preceding paragraphs about what force means are the ones we're trying to get you to focus on. And the first one, you can find it involved aggravated sexual abuse if you find that he used force during the alleged counter. Fine. But, you know, if that had been the only thing you'd said, maybe you could have said something about restraint. Because if it's a physical restraint of somebody, such that they can't move, maybe that's a form of force. But then to say you can infer force, or force can be implied from a disparity in coercive power, he's a police officer, she isn't, or a disparity in size, that's the problem. Well, I would suggest that it's more appropriate to look at the entire instruction rather than pick out one phrase and say that's flawed, therefore the whole instruction is invalid. You might want to use your remaining time to tell us why there's no prejudice. All right. There's no prejudice because the evidence was very strong on the proposition that this was aggravated sexual abuse. Ms. Lemons testified that she was alone in the house with Officer Cates. She felt she had no ability to resist him because he was a police officer with a gun. He physically manhandled her. He spun her around. He pulled down her pants. He ordered her to commit oral sex on him. He grabbed her head and pulled her hair at various times. He choked her from behind during sexual intercourse. And so all of those things which were not meaningfully contradicted by Mr. Cates. What does that mean? He contradicted the whole thing. He says isn't this bizarre? I'm going to go in on a call. I shouldn't say meaningfully contradicted. I should say it was not credibly contradicted by Mr. Cates. That's a jury's function. If the jury isn't asked to focus on the right things, how can we be sure it would have come out the same way? Well, I don't think that the fact that there's a phrase in a jury instruction which we could argue about whether it was proper or not, I don't think that that needs to be focused on or is appropriately focused on in a way that ignores the rest of the instruction and in a way that ignores the record here. I say that Mr. Cates did not credibly contradict Ms. Lemons as to what happened because both of the police and then he admitted it in his own testimony, he was interviewed in effect three times by the police. Each time he gave a different story. The first time he said there was no sexual contact. The second time he said, well, there was some sexual contact, but it was all her touching him and she was the aggressor. The third time he said, well, there was oral sex and there was vaginal intercourse, but she not only agreed, she was the sexual aggressor. So the fact that he gave these three different and contrasting versions not only didn't credibly contradict her version as to what occurred, but it actually strengthened it because his attempt at defense was that weak. And then if I can just finish with one more thought on that. Thank you. Quickly. I would suggest to you that the contention that Ms. Lemons was the sexual aggressor here is even more ridiculous because let's think of the circumstances. She had been in a physical fight with a neighbor. She said she was bruised and disheveled. Then rocks and bricks were thrown through most of the windows of her house, leaving glass all over the house. She felt it was enough of an emergency to call 911. The police arrived. They all agreed that there was too much glass around. Her children shouldn't be there. It wasn't safe. She called a relative and said, come on and pick up the kids. They got the kids out of there. We're familiar with the record, so we'll take that into account. I would suggest that those facts further. Okay. Thank you. So I understand that's your harmless error point. Thank you. Thank you very much. Anything further, Mr. Henderson? I think you have about a minute. In response to Judge Sykes' question, I can't find anything. Mr. Cates was called to testify and there was no colloquy before that. The minutes of the pretrial conference don't indicate a colloquy, so I'm unaware at this time. I think I heard Mr. Johnson say Boyles was wrongly decided, and so in this case we should jettison that. I think that's a very strong argument that trial counsel is ineffective because it seems to concede, yeah, Boyles says this jury instruction was wrong. And, of course, the district court couldn't overrule this court's opinion. So even if on appeal maybe the court would have overruled Boyles, which I think wouldn't have happened, trial counsel then was ineffective. And the last point, Mr. Johnson, I just gave an argument about that this was a sexual assault. The jury instruction question is not about that. It's about whether it's an aggravated sexual assault or just a regular one. And the conflation of the fear and the force was the centerpiece of this trial. In its closing argument, the government says it was that fear that caused her to submit to the defendant's orders. The sexual assault was initiated by coercion and intimidation, but it was continued with force. And so there's just a conflation here. The jury instruction was critical, and it misled the jury and resulted in a sentence 23 years above what would have otherwise been the statutory maximum. Unless the court has further questions, I'd ask to reverse for a new trial. Thank you. All right. I see none, so thank you very much. We will take the case under advisement.